**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

DAVID CHATMAN,

Civ. No. 25-3147 (JRT/LIB)

Plaintiff,

v.

CENTURION OF MINNESOTA, LLC; PAUL
SCHNELL; LYNN STOTTLER; RICK ELSTAD;
KERI OVSAK; KATIE KNEISEL; and JOHN
AND JANE DOE 1 THROUGH 15,
*correctional officers*,

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO
DISMISS**

Defendants.

Vincent J. Moccio, **BENNEROTTE & ASSOCIATES, P.A.**, 3085 Justice Way, Suite 200, Eagan, MN 55121, for Plaintiff.

Anthony J. Novak and Carolin J. Nearing, **LARSON KING, LLP**, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101, and Julia A. Lines, **THE KINETIC GROUP**, 900 Bob Ehlen Drive, Anoka, MN 55303 for Defendants Centurion of Minnesota, LLC, and Lynn Stottler.

Jeffrey A. Timmerman, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for Defendants Paul Schnell, Rick Elstad, Keri Ovsak, and Katie Kneisel.

Plaintiff David Chatman suffered injuries to his feet while an inmate at Minnesota Correctional Facility—Moose Lake ("Moose Lake"). On multiple occasions, Chatman, who has diabetes and experiences numbness in his feet, suffered burns on his feet from the heat register that was positioned on the wall above the bed in his cell. Chatman suffered

severe blisters, and in the months after he was released from Moose Lake, three of Chatman's toes were amputated.

Chatman brings this case under 42 U.S.C. § 1983 and asserts that several Defendants violated his rights under the Eighth Amendment to the U.S. Constitution in providing inadequate medical care and failing to ensure that Chatman was confined in safe conditions. Defendants include employees of the Minnesota Department of Corrections ("DOC") and Centurion of Minnesota, LLC, a private company that contracts with the DOC to provide medical services to inmates.

The parties have agreed to dismiss various counts against some Defendants, and the Court will dismiss those claims without prejudice. The remaining claims under dispute are for Eighth Amendment violations against Dr. Lynn Stottler, Nurse Practitioner Keri Ovsak, and Nurse Rick Elstad, medical providers who treated Chatman while he was at Moose Lake. Because Chatman's Complaint alleges facts sufficient to plausibly support his Eighth Amendment Claims, the Court will deny Defendants' motions to dismiss as to Count I against these three Defendants.

**BACKGROUND**

I.    **FACTS**

Chatman alleges the following facts in his Complaint. (*See* Compl., Aug. 7, 2025, Docket No. 1.) Chatman entered custody at Moose Lake on December 4, 2024. (*Id*. ¶ 13.) At intake, his "blood glucose was profoundly elevated," and he "was started on insulin and corrective sliding scale insulin." (*Id*. ¶ 13.)

-2-

Five days later, on December 9, Chatman reported to Nurse Rick Elstad that "he fell asleep with his right foot on the heat register of his room and now has a burn and increased pain." (*Id*. ¶ 14.)  Nurse Elstad's notes state: "[Chatman] is a diabetic, Dx of neuropathy, currently taking Gabapentin to help with pain.  He states that he is having increased pain since burning foot 2 days ago." (*Id*.)

Chatman, "shortly thereafter," was seen by Dr. Stottler, who implemented a treatment plan of "monitor[ing] for worsening symptoms like increased pain, increased discoloration, or skin changes." (*Id*. ¶ 15.)  "The nursing staff was directed to follow up and check [Chatman's] condition within a couple days of Dr. Stottler's assessment." (*Id*.) Two days later, Nurse Practitioner Ovsak noted that Chatman "reports chronic numbness and foot was against heater during sleep.  Noted blister has now opened." (*Id.* ¶ 16.) Ovsak instructed Chatman on "signs and symptoms of infection to report promptly." (*Id.*)

On December 14, 2024, Chatman was seen by Nurse Kneisel. (*Id*. ¶ 17.)  Chatman reported that he had again fallen asleep with his feet against the heater and burned his right big toe and left second toe. (*Id*.)  Nurse Kneisel made note of multiple blisters on Chatman's toes, prescribed him medication, and instructed to monitor for signs of infection. (*Id*.)  Chatman saw Nurse Kneisel again later that day. (*Id*. ¶ 19.)  She noted that Chatman's blisters had begun draining and assessed a "suspected infection." (*Id*. ¶ 19.)  She ordered an antibiotic and ordered Chatman to follow up two days later. (*Id*.)

Twelve days later, on December 26, Chatman expressed concern to Moose Lake officials regarding both of his feet.  (*Id*. ¶ 21.)  He also reported additional burns on his toes.  (*Id*.)  Nurse Elstad examined Chatman, noting "open areas on right foot 2nd and 3rd toes, Left foot 1st, 2nd, and 3rd toes."  (*Id*.)  Once escorted to health services, Nurse Practitioner Ovsak evaluated Chatman, and she made note of Chatman's various symptoms on both of his feet.  (*Id*.)  Also on December 26, "[Chatman's] insulin was increased."  (*Id*. ¶ 20.)

On January 1, 2025, Dr. Stottler noted multiple blisters on several of Chatman's toes, and assessed as follows:

> Foot lesion secondary to burns.  Continue dressings as they have been.  Advised the patient to leave the blister skin intact until it . . . mostly . . . falls off.  Hope this will be healed by this time of his anticipated release in 2 to 3 weeks.  Diabetes poorly controlled.

 (*Id*. ¶ 21.)

On January 15, 2025, Chatman was seen by Nurse Practitioner Ovsak, who observed that "distal aspect of first and third toes bilateral have black dry tissue.  Pulses not palpable.  Feet are warm."  (*Id*. ¶ 23.)  Nurse Practitioner Ovsak noted that they had "discussed concern for arterial insufficiency and high glucose impairing healing . . . due to upcoming release, will need to follow up with community provider."  (*Id*.)

Chatman was released from Moose Lake on January 21, 2025.  On February 12, 2025, two toes on Chatman's left foot needed to be amputated.  (*Id*. ¶ 25.)  His right big toe was amputated in July 2025.  (*Id*.)

## II.   PROCEDURAL HISTORY

Chatman filed a Complaint against several Defendants on August 7, 2025.  (*See* Compl., Docket No. 1.)   On August 29, Commissioner Schnell, Nurse Elstad, Nurse Practitioner Ovsak, and Nurse Kneisel (collectively, "the State Defendants") moved to dismiss the entire Complaint.  (Mot. Dismiss, Aug. 29, 2025, Docket No. 6; Defs.' Mem. Supp. Mot. Dismiss ("State Defs.' Mem."), Aug. 29, 2025, Docket No. 9.)  Centurion and Dr. Stottler (collectively, "the Centurion Defendants") also moved to dismiss the entire Complaint on August 29, 2025.  (Mot. Dismiss, Aug. 29, 2025, Docket No. 16; Defs.' Mem. Supp. Mot. Dismiss ("Centurion Defs.' Mem."), Aug. 29, 2025, Docket No. 19.)

Chatman filed a memorandum responding collectively to the two motions to dismiss, in which he "acquiese[d] to the dismissal without prejudice of [all claims against] Commissioner Schnell, Nurse Kneisel, Does and Centurion."   (Pl.'s Mem. Opp. Mot. Dismiss ("Pl.'s Mem."), Sept. 19, 2025, Docket No. 25.)  Chatman stated that "Defendants' motions should be denied as to Dr. Stottler, Nurse Elstad, and Nurse [Practitioner] Ovsak," and that "[t]he Complaint states a plausible Eighth Amendment claim against Dr. Stottler, Nurse Elstad, and Nurse [Practitioner] Ovsak."  (*Id.* at 2.)

Accordingly, the only claim requiring the Court's consideration is Count I—styled in the Complaint as "Denial of Due Process Right to Adequate Medical Care"—as alleged against Nurse Elstad, Nurse Practitioner Ovsak, and Dr. Stottler.[1]

**DISCUSSION**

## I.   STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's

---

[1] Chatman's Complaint also brought claims against Elstad, Ovsak, and Stottler in Count VIII, alleging Medical Negligence under state law.  (Compl. ¶¶ 59–64.)  But because Chatman's memorandum did not make any arguments supporting Count VIII, and argued only against the dismissal of Count I, the Court will grant Defendants' Motions to Dismiss as to Count VIII.

factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.     DEFENDANTS' MOTIONS TO DISMISS

### A.     Applicable Eighth Amendment Standards

"The [Eighth] Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–527). "[T]he offending conduct must be wanton" to constitute an Eighth Amendment violation. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). Eighth Amendment conditions of confinement claims are "analyzed under a **deliberate indifference** standard." *Thomas-El v. Francis*, 99 F.4th 1115, 1117 (8th Cir. 2024) (emphasis added).

The "deliberate indifference standard has two components: an objective component and a subjective component." *Id*. "First, the alleged violation must be, objectively, sufficiently serious." *Id*. (cleaned up). In the context of a claim challenging the conditions of a prisoner's confinement, the objective component requires that "the

deprivation must result in the denial of the minimal civilized measure of life's necessities."

*Id*. (cleaned up).  The subjective prong mandates that "a prison official may only be found liable under the Eighth Amendment for a conditions of confinement violation if the official knows of and disregards an excessive risk to inmate health and safety."  *Id*. (cleaned up).

In the context of a prisoner's medical care, "[a] prison official is deliberately indifferent if she 'knows of and disregards' a serious medical need or a substantial risk to an inmate's health or safety."  *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Farmer*, 511 U.S. at 837).  The Eighth Circuit has held:

> [m]edical malpractice alone . . . is not actionable under the Eighth Amendment.  For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness . . . .

*Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (emphasis added) (internal citations and quotation marks omitted).  "Negligent misdiagnosis does not create a cognizable claim under § 1983."  *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009). Deliberate indifference to the serious medical needs of a prisoner may include "intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed."  *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

**B.      Analysis**

The Court concludes that Chatman has stated a plausible Eighth Amendment claim as to Nurse Elstad, Nurse Practitioner Ovsak, and Dr Stottler; therefore, the Court will deny the State Defendants' and Centurion Defendants' Motions to Dismiss as to Count I.

### 1.      Nurse Elstad and Dr. Stottler

Chatman states that his "theory of liability against Nurse Elstad and Dr. Stottler" is "not that Nurse Elstad and Dr. Stottler made an inadequate medical judgment, but that they were deliberately indifferent when they failed to act in a manner that mitigated the known risk posed to Chatman by a condition of his confinement." (Pl.'s Mem. at 13–14.)[2]

Defendants offer two core rebuttals to this claim.   First, they contend that Chatman's wounds arose from his own failure to sleep in the correct orientation on his bed even after he was expressly directed to do so, which precludes any finding that Elstad and Stottler acted with deliberate indifference.   The State Defendants assert that "[t]here is no indication in the Complaint that Chatman was unable to understand and follow Nurse Elstad's common sense command to avoid further harm, or that it was foreseeable

---

[2] Centurion Defendants argue that Chatman's Complaint specifically brings a claim for inadequate medical care against Dr. Stottler not a conditions of confinement claim, and that "Plaintiff cannot abandon his pled claims and articulate new claims in motion briefing[.]" (Centurion Defs.' Reply Mem., Oct. 3, 2025, Docket No. 27.)  However, the Court concludes that Count I of Chatman's Complaint, which alleged violations of the Eighth Amendment, and the facts supporting Count I, are sufficient to support Chatman's theory of liability as to Nurse Elstad and Dr. Stottler as argued in his response memorandum. *See Schriener*, 774 F.3d at 444 (stating that the Court may "consider those materials that are necessarily embraced by the pleadings" when ruling on a motion to dismiss.).

to Nurse Elstad that Chatman would make the same mistake twice." (State Defs.' Reply Mem. at 3, Oct. 2, 2025, Docket No. 26.) The Centurion Defendants make similar arguments.

Second, the Centurion Defendants raise the issue of whether Dr. Stottler had a duty, or even had the authority, to move Chatman to a different cell—they emphasize that "Dr. Stottler . . . is a medical doctor" not a "member of facility administration," and thus she was without "a legal duty . . . in the context of" Chatman's claim that the Dr. Stottler should have facilitated Chatman's move to a cell where his feet were not at risk. (Centurion Defs.' Reply Mem. at 2–3, Oct. 3, 2025, Docket No. 27.)

Defendants' arguments fail at this stage. Chatman's Eighth Amendment claims against Nurse Elstad and Dr. Stottler center on demonstrating that they "knowingly left Chatman in a cell where it was exceedingly likely that he would further seriously injure himself," meaning that they "completely and totally failed to provide care that mitigated the substantial risk that Chatman would be further injured by the vent in his cell." (Pl.'s Mem. at 10, 12.) To survive a 12(b)(6) motion to dismiss, Chatman must allege sufficient facts to plausibly support a claim that: (1) Chatman's cell created an "excessive risk to inmate health or safety;" and (2) that Elstad and Stottler actually knew of the danger, and disregarded it. *Farmer*, 511 U.S. at 834; *see also Thomas-El*, 99 F.4th at 1117. Chatman alleges in his Complaint that he repeatedly raised concerns regarding the proximity of the heat register in his cell relative to his bed, and that Nurse Elstad and Dr. Stottler knew

-10-

Chatman was sustaining repeated wounds to his feet as a result.  (Compl. ¶¶ 14–23.) Nevertheless, Chatman alleges that he was left to remain in the cell that presented a danger to his health.  Taken as true, these allegations support a plausible Eighth Amendment claim.

The Court will therefore deny Defendants' Motions to Dismiss Count I as to Nurse Elstad and Dr. Stottler.

### 2.      Nurse Practitioner Ovsak

Chatman's Eighth Amendment claim as to Nurse Practitioner Ovsak is premised on allegations of inadequate medical care.  Chatman alleges that "five days before [his] release, Plaintiff was seen by Nurse [Practitioner] Ovsak who noted 'distal aspect of first and third toes bilateral have black dry tissue.  Pulses not palpable.  Feet are warm.'" (Compl. ¶ 23.)  "She noted they 'discussed concern for arterial insufficiency and high glucose impairing healing,'" but ultimately concluded "due to upcoming release, [Chatman] will need to follow up with community provider."  (*Id.*)  Chatman therefore argues that despite Nurse Practitioner Ovsak's "admission that [Chatman] needed further and elevated care," she "disregard[ed] Chatman's need for further and elevated care based on his upcoming release date."  (Pl.'s Mem. at 18.)

The State Defendants seek dismissal, emphasizing the reasonableness of Nurse Practitioner Ovsak's medical care.  They emphasize that Ovsak increased Chatman's insulin dosage, "mere days before his release from prison."  (*See* Timmerman Decl. ¶ 3 &

Ex. B., Aug. 29, 2025, Docket Nos. 10–11)[3] and that Chatman's claim essentially amounts to a disagreement with Ovsak's judgment calls in providing medical care.  Defendants urge that such a dispute is insufficient to support an Eighth Amendment claim.

To ultimately prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must meet an exceedingly high bar.  Disagreement with medical judgment is insufficient—"[m]edical malpractice alone . . . is not actionable under the Eighth Amendment," and "even . . . gross negligence," is not enough to support a violation. *Popoalii*, 512 F.3d at 499.  However, the Court concludes that the allegations in Chatman's Complaint, if taken as true—including that Nurse Practitioner Ovsak had witnessed the development of Chatman's condition, knew of the severe risk to Chatman's feet, but ultimately did not provide further treatment because she knew of his imminent release, which ultimately led to the amputation of three of Chatman's toes—are sufficient to state a plausible claim, and thus survive a motion to dismiss under Rule 12(b)(6).

The Court will therefore deny the State Defendants' Motion to Dismiss Count I as to Nurse Practitioner Ovsak.[4]

---

[3] The Court considers this fact, although raised by Defendants and not alleged in the Complaint, because it is based on Chatman's Moose Lake medical records which are repeatedly referenced in the Complaint.

[4] State Defendants also briefly raise the doctrine of qualified immunity as a defense to Chatman's claims—in a footnote in their memorandum, and in one sentence in their reply. (State Defs.' Mem. at 13 n.9; State Defs.' Reply at 4.)  The Court rejects Defendants' cursory argument based on qualified immunity at this stage.

**CONCLUSION**

The Court will dismiss all claims brought in Chatman's Complaint aside from Count I as alleged against Rick Elstad, Keri Ovsak, and Lynn Stottler.  The Court will therefore grant the Defendants' Motions to Dismiss in part but will deny the motions in part as to the remaining disputed claims, because Chatman's Complaint alleges facts sufficient to support plausible claims for relief against each of these Defendants under the Eighth Amendment.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The State Defendants' Motion to Dismiss (Docket No [6]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The motion is **DENIED** as to Count I as alleged against Rick Elstad and Keri Ovsak;

   b. The motion is **GRANTED without prejudice** as to all other claims.

2. The Centurion Defendants' Motion to Dismiss (Docket No. [16]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.  The motion is **DENIED** as to Count I as alleged against Lynn Stottler;

b.  The motion is **GRANTED without prejudice** as to all other claims.

DATED: March 10, 2026
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge